IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAMON JOYNER, | : |
|       Petitioner, | : |
| v. | :   Civil Action No. 19-1661-CFC |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
|       Respondents. | : |

## **MEMORANDUM OPINION**

Ramon Joyner. *Pro Se* Petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Respondents.

September 1, 2022
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 filed by Ramon Joyner. (D.I. 1)  The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 7; D.I. 13)  For the reasons discussed, the Court will deny the Petition.

I.  **BACKGROUND**

> Brooks [a pseudonym], her mother, and two friends, went to a casino in Wilmington, Delaware on February 7, 2015.  Brooks saw [Petitioner] at the casino and struck up a conversation with him.  Brooks and [Petitioner] were acquainted with each other and had each other's cell phone numbers.  Early the next morning, Brooks and [Petitioner] decided to leave the casino in separate cars and go out for breakfast.  After picking up food at a drive-thru restaurant, Brooks and [Petitioner] went to [Petitioner's] nearby hotel room, where Brooks fell asleep after eating breakfast.
>
> Brooks testified that when she woke up awhile later, [Petitioner] was gone and her ID and car keys were missing.  Brooks texted and called [Petitioner] multiple times with no answer.  [Petitioner] finally responded to Brooks, sending her a text expressing his desire to have sex with her and his frustration that she would not oblige.  Brooks eventually agreed to have sex with [Petitioner] for the purpose of obtaining her keys.  According to Brooks, when [Petitioner] returned to the room with the keys, he stated that she needed to "live up to her end of the bargain" and have sex with him.
>
> Brooks testified that she did not want to have sex with [Petitioner], but that he was standing between her and the hotel room door and "something about his stance ... let her know that he wasn't going to give up easily." Consequently, Brooks picked up the room phone and dialed zero to call the front desk to ask for help, telling the woman who answered the phone, "I need someone in the room."  At that, according to Brooks, [Petitioner] became angry, snatched the phone from her hand, and hit her with a closed fist.  Brooks testified that [Petitioner] continued to hit her as he held her down and buried her face in a pillow, which suffocated her, and that he pulled down her pants and touched her buttocks and vagina

> with his hands. According to Brooks, [Petitioner] then took his arm off of the back of her neck and used his hand to try to guide his penis into her vagina. Brooks testified that when she felt his penis on her buttocks she "started squirming" and "thrust her body on the floor, and she literally fell on the floor."
>
> Brooks testified that she attempted twice to flee the hotel room during the ordeal. The first time, Brooks made it out of the room and to her car before [Petitioner] caught her and dragged her back to the room where he continued to beat and choke her. When Brooks attempted to escape the second time, [Petitioner] stopped her, ripped the phone cord from the base of the phone and tied her arms with it and her feet with another cord. According to Brooks, when [Petitioner] eventually left the room, she untied her arms, deadlocked the door, and attempted without success to reconnect the phone and call 911. Brooks periodically looked outside for [Petitioner], but she stayed in the room even after there was no sight of his car. Eventually Brooks left the room and sought help from a maintenance worker.
>
> When [Petitioner] left the room he went to the hotel front desk to check out and retrieve his room deposit. A few minutes later, and while [Petitioner] was still in the hotel lobby, Brooks and the maintenance worker entered the lobby and alerted other hotel staff about the altercation in [Petitioner's] room. The hotel staff called 911. [Petitioner] remained in the lobby, stating that he wanted to explain to the police that Brooks had attempted to rob him. Officers from the Delaware State Police then arrived at the scene and arrested [Petitioner].
>
> Later that morning, Brooks went to Christiana Hospital where she was examined by a forensic nurse examiner. At trial, the nurse read from the medical history she prepared of the information Brooks told her about why Brooks was at the hospital, which included Brooks' report that [Petitioner] had penetrated her vagina with his finger.

*Joyner v. State*, 155 A.3d 832 (Table), 2017 WL 444842, at *1-2 (Del. Jan. 20, 2017).

In April 2015, Petitioner was indicted on charges of attempted first degree rape, second degree rape, first degree kidnapping, strangulation, and malicious interference with emergency communications. *See id.* at *1. A Delaware Superior Court jury convicted

2

Petitioner in October 2015 of first degree unlawful sexual contact (as a lesser-included-offense of second degree rape), first degree kidnapping, strangulation, and malicious interference with emergency communications. See id. at *2. The jury could not reach a verdict on the attempted first degree rape charge, and the State subsequently entered a *nolle prosequi* on that charge. See id. On January 29, 2016, the Superior Court sentenced Petitioner to an aggregate of 20 years of incarceration, followed by six months at Level IV incarceration and concurrent terms of probation. See id. The Delaware Supreme Court affirmed Petitioner's convictions on direct appeal. See id. at *7.

In January 2017, Petitioner filed in the Delaware Superior Court a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. (D.I. 7 at 3; D.I. 8-1 at 9, Entry No. 61) The Superior Court appointed counsel to represent Petitioner in his Rule 61 proceeding and, on December 6, 2017, appointed counsel filed an amended Rule 61 motion ("Rule 61 motion") on Petitioner's behalf. (D.I. 8-9 at 31-77; D.I. 8-14 (Appendix)) The Superior Court denied Petitioner's Rule 61 motion on July 17, 2018. (D.I. 8-6 at 35-47); see State v. Joyner, 2018 WL 3492763, at *4 (Del. Super. Ct. July 17, 2018). Petitioner appealed that decision, and the Delaware Supreme Court affirmed the Superior Court's decision on April 18, 2019. See Joyner v. State, 210 A.3d 144 (Table), 2019 WL 1768938, at *3 (Del. Apr. 18, 2019).

In February 2019, Petitioner filed in the Superior Court a motion for sentence modification/reduction asserting: (1) his sentence should be modified to include sex offender treatment/counseling; (2) his sentence exceeds statutory limits because defense counsel did not consider Petitioner's right to enter treatment programs; and (3)

3

defense counsel provided ineffective assistance by failing to request sex offender treatment/counseling for Petitioner, and by failing to advise Petitioner about the advantages and disadvantages of proceeding to trial. (D.I. 8-16) On April 30, 2019, the Superior Court granted Petitioner's modification of sentence motion to the extent he sought to enter sex offender counseling/treatment while at Level V incarceration, and denied the motion to the extent it alleged ineffective assistance of counsel. (Id.) Petitioner filed a second motion for sentence modification in July 2020, asserting: (1) he should be sentenced to home confinement due to the dangers of Covid-19; (2) he needed more adequate medical care; (3) his sentence exceeded statutory limits because defense counsel failed to consider Petitioner's right to enter treatment programs while incarcerated; and (4) his sentence constitutes cruel and unusual punishment. (D.I. 8-18 at 1-4) The Superior Court denied Petitioner's second motion for reduction/modification of sentence on September 21, 2020. (D.I. 8-19)

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure

4

that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that his habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does

5

not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson,* 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo,* 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman,* 501 U.S. at 749; *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that

6

the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[1] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by pointing to "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams*

---

[1] *Murray*, 477 U.S. at 496.

7

*v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Petitioner asserts three Claims in his timely-filed Petition: (1) defense counsel provided ineffective assistance by failing to object to the testimony of a forensic nurse examiner; (2) defense counsel provided ineffective assistance because he failed "to administer the proper counsel to someone facing a life sentence" and he failed to "put up" a defense (D.I. 1 at 7); and (3) the cumulative effect of defense counsel's errors

resulted in a constitutional violation.

### A. Claim One: Ineffective Assistance re: Forensic Nurse Examiner Testimony

In Claim One, Petitioner asserts that defense counsel should have objected to the testimony provided by the forensic nurse examiner because it was "a detailed narration of the victim's own testimony" rather than "a medical account of the [] victim's injuries." (D.I. 1 at 5) The Superior Court denied the argument as meritless, and the Delaware Supreme Court affirmed that decision. Consequently, Claim One will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. A court many deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

In order to sustain an ineffective assistance of counsel claim, a petitioner must

9

make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. See *Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's instant ineffective assistance of counsel contention. See *Joyner*, 2019 WL 1768938, at *3-4. As a result, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. See *Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

10

In this case, the Superior Court rejected Petitioner's instant argument based on Delaware evidentiary rules, finding that the portion of the forensic nurse examiner's testimony during which she read from her examination notes was "admitted as a statement made for the purpose of medical diagnosis or treatment under DRE 804(4)" and, therefore, "served a different purpose than the direct testimony of complaining witness." *Joyner*, 2018 WL 3492763, at *3. The Superior Court also determined that "the probative value of the notes on the issue of medical diagnosis or treatment was not substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence." *Id.* The Superior Court concluded that defense counsel did not perform ineffectively by failing to object to the testimony because it was properly admitted. *Id.* On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's decision after focusing on the prejudice prong of *Strickland*, explaining: "even if portions of the nurse's narrative were not admissible under DRE 803(4), [Petitioner] has failed to satisfy the prejudice element of *Strickland* because [the victims] testimony and other admissible evidence was sufficient to sustain the jury's verdict." *See Joyner*, 2019 WL 1768938, at *4.

After reviewing the record, the Court concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of *Strickland*. As an initial matter, the Court notes that the Delaware Supreme Court reasonably applied *Strickland* by only considering the prejudice-prong of the *Strickland* standard when denying Claim One. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) ("Our Court has endorsed the practical suggestion in *Strickland* that we may consider the prejudice prong before examining the performance of counsel prong

11

because this course of action is less burdensome to defense counsel.") (cleaned up). With regard to prejudice, Petitioner cannot demonstrate a reasonable probability that the jury would have acquitted him but for defense counsel's alleged error, because there was significant independent evidence to support a guilty verdict. The other independent evidence included testimony from witnesses who encountered Brooks immediately after the assault and who testified as to her physical and mental condition, photographs and other documentary evidence of physical injuries consistent with Brooks' account and also consistent with physical and sexual assault, and testimony describing damage to the hotel room which was consistent with a struggle and assault. (D.I. 8-3 at 51-62, 86-87, 111-114, 132-134, 159-173, 176-179) Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

### B. Claim Two: General Ineffective Assistance

In Claim Two, Petitioner contends that defense counsel was generally ineffective for "failing to administer the proper counsel to someone facing a life sentence," and "put[ting] up no defense." (D.I. 1 at 8) Petitioner's Reply provides the following illustrative instances of defense counsel's alleged ineffectiveness: (1) counsel did not impeach the victim with inconsistencies in her story; (2) counsel only met with Petitioner once and lied when saying otherwise in his Rule 61 affidavit; (3) counsel did not confer with Petitioner about "add[ing] the charge of unlawful sexual contact first degree"; and (4) counsel did not develop a trial strategy. (D.I. 13 at 5)

The record reveals that Petitioner did not exhaust state remedies for Claim Two. Even though Petitioner presented a claim regarding defense counsel's general failure to develop a trial strategy and "administer proper counsel" in his original *pro se* Rule 61

12

motion, he did not include the instant allegations of Claim Two in his amended Rule 61 motion or to the Delaware Supreme Court on post-conviction appeal. Any attempt by Petitioner to raise Claim Two in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). See Parker v. DeMatteis, 2021 WL 3709733, at *6 (D. Del. Aug. 20, 2021). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claim. Similarly, the exceptions to Rule 61 bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to Claim Two.

Since Petitioner is precluded from exhausting state remedies for Claim Two at this point, the Court must excuse Petitioner's failure to exhaust but treat the Claim as procedurally defaulted. Consequently, the Court cannot review the merits of Claim Two absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

Petitioner does not assert any cause for his failure to include Claim Two on post-conviction appeal. To the extent Petitioner would argue that his default should be excused pursuant to Martinez v. Ryan, 566 U.S. 1 (2012) because post-conviction counsel failed to include Claim Two in the amended Rule 61 motion or subsequent Rule 61 appeal, the argument is unavailing. In Martinez, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of

ineffective assistance of trial counsel. *Id.* at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id.* at 9-10, 16-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some merit", and this inquiry is governed by the standards applicable to certificates of appealability. *Id.* at 14-15.

The Third Circuit recently explained the application of *Martinez* in habeas cases:

> *Martinez* recognizes a narrow exception to the doctrine of procedural default: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." This exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has "some merit," and that 2) his state-post conviction counsel was "ineffective under the standards of *Strickland v. Washington*."

*Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). "To demonstrate that his claim has some merit, a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Id.* at 938 (quoting *Miller-El*, 537 U.S. at 336). To demonstrate that post-conviction counsel's ineffectiveness caused the procedural default, a petitioner must show that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard, *i.e.*, "that his state post-conviction counsel's performance fell below an objective standard of reasonableness." *Workman*, 915 F.3d at 941.

14

Here, Petitioner has failed to demonstrate that the underlying ineffective assistance of defense counsel argument in Claim Two has "some merit" under the standard contemplated by *Martinez* and *Workman*. Petitioner was arrested in February 2015. (D.I. 8-1 at 1, Entry No. 1) In July 2015, Petitioner filed a motion to dismiss defense counsel because Petitioner believed counsel "was not devoting enough time to his case." *Joyner*, 2017 WL 444842, at *3. On August 18, 2015, the Superior Court held a hearing on Petitioner's motion to dismiss counsel, (D.I. 8-1 at 4, Entry No. 23), during which Petitioner explained that defense "counsel had only spoken to him once" prior to the August 18, 2015 hearing. *Joyner*, 2017 WL 444842, at *3. The Superior Court denied the motion to dismiss counsel. *See id.* On direct appeal, Petitioner argued that the Superior Court abused its discretion because it never ruled on the motion to dismiss and then denied his request for a continuance to retain new counsel. (D.I. 8-2 at 18-21) The Delaware Supreme Court rejected Petitioner's argument, explaining that (1) the Superior Court did rule on—and actually denied—Petitioner's motion to dismiss counsel; and (2) the Superior Court did not abuse its discretion in denying the motion to dismiss counsel, because "it [did] not appear that trial counsel was neglecting the case." *Joyner*, 2017 WL 444842, at *3. The Delaware Supreme Court specifically found that:

> The record and Superior Court docket reflect that trial counsel filed motions on Joyner's behalf in March and April 2015 and participated in an office conference and final case review in June 2015. Under these circumstances, the Superior Court's decision that [Petitioner's] dissatisfaction with his trial counsel did not justify the appointment of new counsel was not an abuse of discretion.

15

*Joyner*, 2017 WL 444842, at *3. Notably, although the Delaware Supreme Court acknowledged Petitioner's concern that defense counsel waited approximately six months before conducting a face-to-face meeting,[2] the Delaware Supreme Court's primary focus with respect to defense counsel's representation appeared to be whether defense counsel heard Petitioner's "version of events" and whether counsel "shared" his knowledge of the State's theory. *Id.* Defense counsel's first Rule 61 affidavit[3] indicates that defense counsel met with Petitioner after the August 18, 2015 hearing[4] and discussed details about: (1) the photos and counsel's opinion as to the role they would play in the State's case; (2) the role an individual named Marie Ortega (whom Petitioner believed could provide an alibi) would play if she was called to testify; and (3) discovery. (D.I. 8-9 at 28-29; D.I. 8-13 at 10) The first Rule 61 affidavit also explains that defense

---

[2]The Delaware Supreme Court stated: "[A]ssuming that trial counsel had, in fact, not yet met with [Petitioner for the first time until a few days before the August 18 hearing], it is clear that [Petitioner] had a rational basis to wonder how his trial counsel could effectively defend him unless counsel spent time with him going over his version of events and sharing what counsel knew of the State's theory." *Id.*

[3]Defense counsel filed a Rule 61 affidavit in response to Petitioner's original *pro se* Rule 61 motion (D.I. 8-9 at 28-30) and another Rule 61 affidavit responding to the allegations in the amended Rule 61 motion (D.I. 8-9 at 78-80). Claim Two in this proceeding mirrors the ineffective assistance of counsel allegations Petitioner presented in his original *pro se* Rule 61 motion, (*see* D.I. 8-13 at 9-12), that were not included in the amended Rule 61 motion filed by post-conviction counsel. Thus, defense counsel's first Rule 61 affidavit is the only affidavit relevant to the instant inquiry.

[4]Although Petitioner asserts that the Rule 61 affidavit does not depict a truthful account about the number of meetings, Petitioner has not provided any support for this contention. While not entirely clear, it appears that the meetings referenced by defense counsel in his first Rule 61 affidavit occurred sometime between the August 18, 2015 hearing and the start of Petitioner's trial in October 2015. The Court bases this assumption on the fact that the Rule 61 affidavit asserts that defense counsel reviewed the discovery with Petitioner (D.I. 8-9 at 29), the majority of which the State provided *after* August 31, 2015. (D.I. 8-1 at 4-6)

counsel did not call any witnesses because there were no witnesses who could have aided Petitioner's defense. (D.I 8-9 at 29) In sum, it appears that defense counsel heard Petitioner's "version of events" and "shared" his knowledge of the State's theory when meeting with Petitioner after the August 18, 2015 hearing.

Additionally, in light of the significant evidence of guilt presented at trial, Petitioner cannot show that defense counsel's actions prejudiced him. As the Delaware Supreme Court explained on post-conviction appeal:

> [The significant other admissible evidence] included photographs that showed injury to Brooks's head, neck, back, left shoulder, right upper arm, and knees. The photographs supported Brooks's account of what had happened and tended to refute [Petitioner's] account. Additionally, a witness who saw Brooks immediately after the incident testified that her "face was bloody" and her "clothes were all tore up." Another witness testified that her "face was very bruised up." There was also evidence that when the police examined the hotel room, they found an alarm clock with its cord on the floor and the telephone and a lamp with their cords tangled on the floor. This tended to corroborate Brooks's testimony that a struggle had taken place in the room. We are satisfied that the other admissible evidence in the case was sufficient to sustain [Petitioner's] conviction.

*Joyner*, 2019 WL 1768938, at *4.

Based on the foregoing, Petitioner has failed to establish that the underlying ineffective assistance of counsel claim has some merit, or that post-conviction counsel's failure to present that Claim in his Rule 61 motion fell below an objective standard of reasonableness. Thus, *Martinez* cannot provide a method for overcoming Petitioner's default.

In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the

17

procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Two as procedurally barred from federal habeas review.

### C. Claim Three: Cumulative Error of Defense Counsel's Ineffectiveness

In his final Claim, Petitioner argues that the cumulative effect of defense counsel's alleged errors resulted in a constitutional violation. Although Petitioner presented his cumulative error argument in his amended Rule 61 motion, he did not present the argument to the Delaware Supreme Court on post-conviction appeal. As a result, he did not exhaust state remedies for Claim Three, and the Claim is procedurally defaulted for the same reasons discussed with respect to the procedural default of Claim Two. See supra at Section III.B. Nevertheless, the Court will exercise its discretion and proceed to the merits of the instant cumulative error argument. See 28 U.S.C. 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

Pursuant to the cumulative error doctrine,

> [i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process. Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

Fahy v. Horn, 516 F.3d 169, 205 (3d Cir.2008) (cleaned up). Here, the Superior Court rejected Petitioner's cumulative error argument because it "found no errors on counsel's

18

part." *Joyner*, 2018 WL 3492763, at *4. As previously discussed, this Court has concluded that Claim One lacks merit, and Claim Two is not substantial. Since Petitioner has not provided anything to demonstrate "actual prejudice" even when the two ineffective assistance of counsel Claims are considered together, the Court will deny Claim Three as meritless.

### D. Pending Motions

Petitioner filed two Motions to Appoint Counsel (D.I. 10; D.I. 16) during the pendency of this proceeding. Having decided to deny the Petition, the Court will dismiss the Motions as moot.

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition and Motions. The Court will issue an Order consistent with this Memorandum Opinion.